378 So.2d 905 (1979)
STATE of Louisiana
v.
Jackie Levell VAUGHN.
No. 64830.
Supreme Court of Louisiana.
December 13, 1979.
James D. Sparks, Jr., Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Kenneth A. Rains, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.[*]
Ronnie Steven Hunter, manager trainee in a Bastrop supermarket, was held up at gunpoint shortly before the store's closing *906 on November 13, 1977 and robbed of the proceeds of one of the store's cash registers. Hunter assisted the police in making a composite picture of his assailant, which was distributed to law enforcement authorities in the surrounding area. When members of the Ouachita Parish Sheriff's Office in Monroe informed the Bastrop police that the composite picture resembled Jackie Vaughn, the Bastrop authorities obtained a photograph of Vaughn and included it in a photographic display presented to Hunter the day following the robbery. Hunter identified Vaughn as the perpetrator. One month later the Bastrop police obtained a new photograph of Vaughn, now in custody in Monroe on other charges, and held a second photographic display in which Hunter again identified the defendant. The next day Hunter identified Vaughn for the third time in a line-up conducted in Monroe, and Vaughn was arrested by the Bastrop police and charged with armed robbery. Defendant's pretrial motion to suppress the photographic and line-up identifications was denied. At a non-jury trial before a second judge, defendant reurged his motion to suppress the identifications and the motion was again denied. After presentation of the state's case, which consisted of testimony by Hunter and by police officers concerning the out-of-court identifications, and an in-court identification by Hunter, defendant moved for a judgment of acquittal, but this motion was denied. Defendant's case was composed of alibi testimony, some of which the state attempted to rebut. Defendant was found guilty of armed robbery and sentenced to fifteen years at hard labor. Of seven assignments of error, six are argued on appeal.
Assignment of Error No. 2
In this assignment of error defendant contends, first, that the trial judge erred in permitting certain police officials to testify concerning the conduct by which Hunter indicated that he identified the defendant in the photographic displays and line-up. Defendant is correct in asserting that this testimony was hearsay. In State v. Arbuthnot, 367 So.2d 296, 298 (La.1979), we set forth the following definition of hearsay:
"... Hearsay evidence is testimony in court, or written evidence, of an out-of-court statement offered to show the truth of the matter asserted therein and resting for its value upon the credibility of the out-of-court assertor. State v. Martin, 356 So.2d 1370 (La.1978); McCormick on Evidence, Section 246 (2d ed. 1972)."
In that case we also indicated that in-court testimony about an out-of-court non-verbal communication is hearsay when the non-verbal communication is assertive in nature, and when it is introduced at trial to prove the truth of the matter asserted. In State v. Ford, 336 So.2d 817, 821 (La.1976), we held specifically that even the acts of pointing to and selecting a photograph constitute such assertive conduct and that testimony about these acts is hearsay, "an assertive communication introduced for the truth of the assertion thereby made."
In Ford we also held, however, that the admission of such hearsay does not constitute reversible error when it is merely cumulative and corroborative of the in-court testimony of the person whose assertive conduct it describes:
"... When hearsay identification testimony is merely corroborative of the witnesses' prior direct evidence of his own identification of the accused, we similarly held admission of the hearsay harmless in State v. Smith, 285 So.2d 240 (La.1973) and State v. Maiden, 258 La. 417, 246 So.2d 810 (1971).

. . . . . .
As noted in McCormick on Evidence, Section 251, p. 603 (2d ed., 1972): `When A testifies that on a prior occasion B pointed to the accused and said, "That's the man who robbed me," the testimony is clearly hearsay. If, however, B is present in court and available for cross-examination, a case within the present section is presented. Similarly if B has himself testified to the prior identification...'" 336 So.2d at 822.
*907 The record indicates that Hunter himself testified, both as the state's first witness and also when recalled later in the proceedings, that he identified the defendant in the course of both photographic displays and the line-up. The record also belies defendant's contention that the hearsay testimony was offered for the principal purpose of proving defendant's identity as the armed robber, rather than in corroboration of Hunter's identification. Because Hunter's in-court testimony provided opportunities for cross-examination by the defense and evaluation of his credibility by the finder of fact, the admission of the officers' hearsay testimony was not prejudicial to defendant. Defendant's argument is therefore without merit.
In this assignment defendant also refers to objections made at trial to the admission of testimony about the line-up format and resulting identification. He claims that the line-up was conducted in a prejudicial manner and that defendant was not afforded the presence of an attorney. The record contains no evidence that the line-up was in any way suggestive; all five participants were similar in sex, race, age and general physical characteristics, and there is no evidence of any attempt to influence Hunter's identification. The record contains conflicting testimony as to whether defendant himself requested that a line-up be held on the condition that his attorney be present, as he contends, or whether, as some of the state's witnesses testified, the line-up was initiated by the Bastrop police and no request was made for an attorney. It is also questionable whether defendant had actually "retained" an attorney at this point in the proceedings. The line-up was held on December 15, 1977, while defendant was being held in the Ouachita Parish jail on another charge. Defendant was not arrested for the armed robbery offense until immediately following the line-up, and the bill of information charging defendant with that offense was not filed until March 2, 1978. In State ex rel. Fields v. Maggio, 368 So.2d 1016, 1020-1021 (La.1979), we made the following statement regarding the due process right to presence of counsel at a pre-indictment line-up:
"In Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the Supreme Court held that the presence of counsel at a pre-indictment line-up was not a requirement of due process. This court has followed Kirby in a number of decisions State v. Hargrove, 330 So.2d 895 (La. 1976); State v. Johnson, 327 So.2d 388 (La.1976)although we have recently indicated that the Kirby rule may be too broad in some instances, such as where the state denies the defendant access to retained counsel. State v. Smith, 357 So.2d 798 (La.1978); State v. Holmes, 354 So.2d 1282, 1287 (La.1977) (Tate and Dennis, JJ. concurring); State v. Spears, 350 So.2d 603, 607 (La.1977) (Calogero, J. concurring)...."
Because there is no clear evidence that defendant had retained counsel at the time of the line-up, or that any request for access to such counsel was made and denied, defendant's complaints about the line-up identification do not constitute grounds for relief.
Assignments of Error Nos. 4 and 5
On September 11, 1978 defense counsel filed a pretrial motion to suppress all testimony concerning the out-of-court photographic display and line-up identifications, and any in-court identification. He alleged that defendant's due process rights had been violated by absence of counsel at the line-up and by the suggestiveness of all the out-of-court identification procedures. A hearing on this motion was held on September 19, 1978 before the Honorable Robert F. Farr, and the motion was denied. At trial before the Honorable Fred Fudickar, Jr., defense counsel repeatedly objected to the state's introduction of evidence concerning the identifications, "simply to preserve whatever rights I've got under the other motions." At the conclusion of the state's case the defendant moved for a judgment of acquittal and, in the course of his argument on that motion, defense counsel announced *908 that he would also "re-urge our motion to suppress," asserting that C.Cr.P. 703 affords a right to move to suppress at any time during the trial. The defense now assigns as error the denial of both motions to suppress.
C.Cr.P. 703 provides:
"A. A defendant aggrieved by an unconstitutional search or seizure may move to suppress, for use as evidence at the trial on the merits, any tangible objects or other property, or documents, books papers or other writings, on the ground that they were so obtained. A motion filed under the provisions of this paragraph must be filed no later than three judicial days before trial on the merits begins, except where the defendant receives notice of trial thirty days before trial on the merits, then such motion must be filed no later than fourteen calendar days before the trial on the merits begins, unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion. The court in its discretion may permit the filing of such a motion to suppress at any time before or during the trial.
B. A defendant may move to suppress for use as evidence at the trial on the merits a written confession or written inculpatory statement, on any ground that would make it inadmissible as evidence. Such a motion to suppress must be filed no later than three judicial days before trial on the merits begins, except where the defendant receives notice of trial thirty days before trial on the merits then such motion must be filed no later than fourteen calendar days before the trial on the merits begins, and shall be heard and decided by the court prior to trial.
A ruling prior to trial on the merits, upon a motion to suppress a written confession or written inculpatory statement, is binding at the trial on the merits. However, a failure to file prior to the trial on the merits a motion to suppress a written confession or written inculpatory statement does not prevent the defendant from objecting to the admissibility thereof at the trial on the merits, and a ruling made adversely to the defendant prior to the trial on the merits upon a motion to suppress a written confession or written inculpatory statement does not prevent the defendant from introducing evidence during the trial concerning the circumstances surrounding the making of a written confession or written inculpatory statement for the purpose of enabling the jury to determine the weight to be given to it.
When a ruling on a motion to suppress is adverse to the defendant, the state shall be required prior to presenting the written confession or written inculpatory statement to the jury, to introduce evidence concerning the circumstances surrounding the making of the written confession or written inculpatory statement for the purpose of enabling the jury to determine the weight to be given to it.
C. On the trial of a motion to suppress filed under the provisions of this article the burden of proof is on the defendant to prove the grounds of his motion, except that the state shall have the burden of proving that a purported written confession or written inculpatory statement was made freely and voluntarily and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."
Under the somewhat ambiguous language and structure of this article it is questionable whether the denial of a pretrial motion to suppress evidence which does not concern written confessions or inculpatory statements is binding at the trial on the merits, or whether such a motion may be urged for a second time at trial.[1] *909 Assuming, without so deciding, that under certain circumstances the motion may be reurged, we shall address the denial of both these motions.
Defendant contends that the out-of-court identification procedures were so suggestive as to taint the in-court identification. However, the transcript of the hearing on the pretrial motion to suppress contains no indication that defendant successfully carried the burden, imposed on him by C.Cr.P. 703(C), of proving suggestiveness in any of the out-of-court identifications. The record shows that both photographic displays were composed of five photographs, all black and white or all in color, of head or head and upper chest of individuals who were similar in sex, race, age and general physical characteristics. The photographs were devoid of any identifying information. The officers who arranged and carried out the displays testified that they were careful not to place defendant's photograph at either end of the displays because this might suggest his identification to Hunter, that no suggestion was made to Hunter as to which photograph he should select, and that he identified defendant without hesitation, even after the photographs were rearranged at random after his initial selection had been made. The line-up similarly consisted of five individuals of "a sufficient resemblance to reasonably test the identification" (State v. Guillot, 353 So.2d 1005, 1008 (La.1977)). The line-up procedure itself was also devoid of any suggestive practices or statements on the part of the law enforcement authorities. There was no error, therefore, in the denial of defendant's pretrial motion to suppress.
Defendant's contention that the trial court was in error in denying his second motion to suppress presents a somewhat more difficult problem. As a result of the malfunctioning of the trial court's recording equipment, certain portions of the trial testimony are absent from the transcript. The missing portions consist of the cross-examination of the police officer who arrived at the scene of the robbery immediately after its perpetration and received the initial information from Hunter, and of part of the direct examination of the officer who teletyped data concerning the composite picture to authorities in the surrounding area. Defendant asserts that the absence of these portions of the transcript makes it impossible for this court to review the trial court's ruling denying his second motion to suppress. We find, however, that the missing testimony regarding Hunter's on-the-scene statements could hardly be relevant or material to the issue presented by the motion to suppress, i. e. the suggestiveness of the photographic displays and the line-up, while any information regarding the composite picture which could be of possible assistance to the defense in proving suggestiveness would certainly have emerged on cross-examination, which is included in the transcript, not only on the state's direct examination of its own witness. We also note that this court has held that, in determining the correctness of a ruling on a pretrial motion to suppress, we are not limited to the evidence presented at the hearing on that motion but may consider all pertinent evidence adduced at the trial on the merits. State v. Chopin, 372 So.2d 1222 (La.1979); State v. Schmidt, 359 So.2d 133 (La.1978); State v. Stewart, 357 So.2d 1111 (La.1978); State v. Dunbar, 356 So.2d 956 (La.1978). In an unusual situation like the one before us here, there is even greater justification for supplementing the evidence introduced at trial with evidence presented at the pretrial hearing, since the pretrial hearing was specifically concerned with the issue of suggestiveness. We find, therefore, that the second motion to suppress was also properly denied, and that this assignment of error lacks merit.
Assignment of Error No. 6
As part of alibi defense the defendant's uncle, Jimmie Drungo, testified that he left work at 6:00 or 6:30 on the night of the robbery and that defendant was in his company from shortly thereafter until early the following morning. The robbery occurred at 8:30 p. m. When asked on cross-examination whether he punched out his *910 time card that night, Drungo stated that he forgot to punch out when he left work but later called one of two foremen, whose name he could not recall, and asked him to punch out his card. In rebuttal, the state introduced the testimony of Gary Gray, bookkeeper for Drungo's employer, to the effect that a time card punched out by a foreman on behalf of an employee would be initialed by the foreman. Over defense's objection, the state also introduced Drungo's time card to show that it had been punched out at 8:06 p. m. on the night of the robbery and that it lacked a foreman's initials. Defendant contends that the trial court erred in admitting the time card into evidence as a business record exception to the hearsay rule.
In State v. Perniciaro, 374 So.2d 1244, 1246 (La.1979), we made the following statement concerning hearsay evidence:
"... Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value on the credibility of the out-of-court asserter. State v. Martin, 356 So.2d 1370 (La.1978)..."
We also acknowledged, however, that business records may be admissible despite the fact that they are hearsay evidence:
"In response to scholarly skepticism toward a broad regular course of business exception in criminal cases, which might violate a defendant's constitutional right confrontation, see Pugh, The Work of the Louisiana Appellate Courts for the 1971-1972 Term, Evidence, 33 La.L.Rev. 306, 318-19 (1973), this Court recognized and applied a restrictive formulation of the common law business records exception in criminal cases. In State v. Monroe, 345 So.2d 1185 (La.1977), we stated:
`* * * Before the exception may be invoked by the State against the defendant, allowing introduction of a permanent record made in the ordinary course of business from personal knowledge of the facts recorded, or from information furnished by one having a business duty to observe and report the facts, it must be shown that the person who made the record is genuinely unavailable for testimony, that he had no strong motive to misrepresent, and that in all probability the evidence is trustworthy. * * *' 345 So.2d at 1190." 374 So.2d at 1246-47.
Louisiana jurisprudence has held that business records are admissible as proof of their assertions if the persons concerned with recording the information, from personal knowledge or from information furnished by one having a business duty to record it, are unavailable for testimony, if the first collected record available to the court is introduced, if the records are identified by one familiar with the bookkeeping procedure, and if the evidence seems reliable. State v. Perniciaro, supra; State v. Monroe, supra; see Comment, Business Records in Louisiana as an Exception to the Hearsay Rule, 21 La.L.Rev. 449 (1961), reprinted in Pugh, Louisiana Evidence Law, 1974, 476-488. Applying these criteria to the record before us, we find that the foreman allegedly responsible for punching the time card on Drungo's behalf was unavailable because of Drungo's inability to remember his name; that the first collected record available was introduced; that the time card was identified by the company's bookkeeper, who was custodian of those records; and that because the time card was punched by machine and was in the bookkeeper's custody until its introduction at trial, it seemed reliable. It was therefore properly admitted into evidence, so that defendant is not entitled to relief on this ground.
Assignment of Error No. 7
In this assignment of error defendant argues that the malfunctioning of the trial court's recording equipment resulted in the absence from the transcript of material which is crucial to this court's adequate review. It should be noted, however, that reversal is not mandated in every case where the trial record is incomplete. In State v. Ford, 338 So.2d 107 at 110, (La. 1976), we stated that "[a] slight inaccuracy *911 in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal would not cause us to reverse defendant's conviction." Because the missing testimony was immaterial to our adequate review of the denial of defendant's second motion to suppress, we have already found that the trial court did not error in denying that motion.
The only other error assigned to which the missing testimony might be material is the trial court's denial of defendant's motion for judgment of acquittal. The denial of such a motion may be reversed on appeal, however, only when there is no evidence of the crime or an essential element thereof or where the denial is a palpable abuse of discretion. State v. Little, 353 So.2d 255 (La.1977). On the basis of the major portions of the record which are available to us here, we could only reach a "no evidence" or "palpable abuse of discretion" determination by finding not only that none of the out-of-court identification evidence was admissible, a conclusion we have already specifically rejected, but also that Hunter's in-court identification of defendant was impermissibly tainted by prior suggestive out-of-court identification procedures. With regard to the latter determination, we indicated in State ex rel. Fields v. Maggio, supra, that due process is not violated by the mere suggestiveness of identification procedures but by the resulting likelihood of misidentification. We also noted that the risk of misidentification should be evaluated by considering the five factors adopted by this court in State v. Guillot, supra, following Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) and Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972): the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. The record shows that Hunter was in uninterrupted, face to face contact with defendant for one to two minutes, while Hunter stood in the manager's booth and defendant stood directly in front of and slightly below him, two feet away, in a well lighted supermarket; and that Hunter had also had face to face contact with defendant about five minutes before the robbery. While it is true that Hunter may have been somewhat nervous at this time, there was nothing else in the context of their confrontation to deflect his attention from the face of his assailant. The accuracy of Hunter's prior description of defendant is indicated by the fact that defendant's photograph was forwarded from Monroe to Bastrop on the basis of its resemblance to the composite picture which Hunter himself made, immediately after the robbery. The record also shows that Hunter did not hesitate to identify defendant at the trial itself, and that the in-court identification was made eleven months after the offense. On the basis of these facts, we must find that Hunter's in-court identification was reliable and that at least some evidence was presented by the state. This assignment of error therefore lacks merit.
For the reasons assigned, defendant's conviction and sentence are affirmed.
NOTES
[*] Honorable JESSE N. STONE, Jr. served as Justice Ad Hoc in the vacancy created by the resignation of TATE, J.
[1] According to Kamisar, LaFave, and Israel, Modern Criminal Procedure, 4th ed., 1974, page 732, most states treat the denial of a pretrial motion to suppress as final, conclusive and binding at trial, except on a showing of evidence theretofore unavailable. But other jurisdictions, and some of the federal courts, permit the trial judge, in his discretion, to reconsider such a motion and possibly reach a different conclusion.