395 So.2d 751 (1981)
STATE of Louisiana
v.
Richard Earl JONES.
No. 80-KA-2132.
Supreme Court of Louisiana.
March 2, 1981.
*752 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Nancy Gilliland, Lavalle Salomon, Asst. Dist. Attys., for plaintiff-appellee.
Edward R. Greenlee, Greenlee & Hurd, Monroe, for defendant-appellant.
COLE, Justice Ad Hoc.[*]
Defendant Richard Earl Jones was charged by bill of information with three counts of simple burglary of an inhabited dwelling, in violation of La.R.S. 14:62.2. At the close of defendant's trial on May 16, 1980, the twelve-member jury returned guilty verdicts as to Counts I and II, for which defendant was sentenced to serve two concurrent nine year terms at hard labor. The present appeal urges six arguments as grounds for reversal of the accused's convictions and sentences.

FACTS
Between February 19 and February 23, 1980, three Ouachita Parish residences were burglarized. Several days later, after receiving information implicating the defendant in all three offenses, officers of the Ouachita Parish Sheriff's Department arrested defendant and transported him to the Sheriff's Department. After questioning, defendant confessed to all three robberies and told authorities where most of the stolen items could be recovered. Followup investigation of defendant's statements led to the recovery of stolen items from persons to whom Jones had sold them.

ASSIGNMENTS OF ERRORS NOS. 1 AND 2
By these assignments defense counsel contends the trial court erred in denying a motion for continuance on grounds he was unprepared for trial and for permitting the introduction of the state's evidence.
Prior to trial, the defense and the prosecution engaged in plea bargain negotiations with regard to these burglary charges, as well as two older charges which were pending when the subsequent burglaries transpired. After Jones' arraignment on March 13, 1980, motions were heard and trial was set for May 14, 1980. During the course of continuing plea bargain negotiations, the two sides were unable to reach agreement until two days prior to the scheduled trial date, at which time the prosecutor warned defense counsel that, in the event Jones failed to plead guilty as planned, he would be the first case called for trial on the fourteenth.
On the day of trial, Jones changed his mind and insisted he be granted a jury trial. Hearing this, defense counsel immediately sought a continuance on grounds his continued participation in plea bargain negotiations and his assumption defendant would plead guilty had caused him to neglect trial preparations. This request was denied.
*753 Article 712 of the Louisiana Code of Criminal Procedure provides:
"[a] motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good grounds therefor."
As a general rule the denial of a continuance is not grounds for reversal absent an abuse of discretion and a showing of specific prejudice caused by denial of the continuance. State v. Durio, 371 So.2d 1158 (La. 1979); State v. Hammontree, 363 So.2d 1364 (La.1978); State v. Lukefahr, 363 So.2d 661 (La.1978). Where the continuance motion is based upon the want of time for preparation by counsel, this specific prejudice requirement has been disregarded only in cases where the preparation time was so minimal as to call into question the basic fairness of the proceeding. State v. Durio, supra; State v. Winston, 327 So.2d 380 (La.1976).
Defense counsel had been actively engaged in the representation of Jones for a period of two months prior to trial. Approximately one month prior to trial a preliminary examination was conducted, as a result of which defense counsel no doubt familiarized himself with Jones' case. In fact, counsel had no idea his client would agree to plead guilty until just two days prior to trial. Even assuming defense counsel had made no previous attempts to prepare his client's defense, it is difficult to see how counsel's ability to ready himself for trial was significantly prejudiced by the defendant's promised plea. Following the denial of defendant's motion for continuance, the trial court recessed for approximately three hours in order to enable the defendant to change into "civilian" clothes. Thereafter jury selection was commenced, eventually concluding on the following day. The state began presentation of its case on the afternoon of May 15th, and following an evening recess, completed its presentation on May 16th. The defense was thus afforded the evening of May 14th to prepare for cross-examination of state witnesses and the evening of May 15th in which to complete preparation of its case-in-chief. Since the prosecution stemmed entirely from Jones' confessions, these evenings should have afforded the defense ample time to prepare its assault on the voluntariness of Jones' confessions.[1] Thus, while a grant of continuance would certainly not have been unwarranted here, it cannot be said the trial judge abused his discretion.
These assignments are without merit.[2]

ASSIGNMENT OF ERROR NO. 3
This assignment arose when Judge Farr sought to apologize to prospective jurors for their inconvenience and make some explanation for the delay wrought by defendant's change of clothes. In so doing, Judge Farr stated:
"Ladies and gentlemen, there are certain aspects of our procedure that can't be changed and try as we might there's not much we can do about it when they take place and you are the victims of such circumstances this morning. I hope that it may help your feelings a little bit to understand why these developments have taken place. The state can only schedule matters for trial and any and all defendants have the right to plead guilty if they want to. They don't have to do that if they don't want to. They don't have to do it until they're called up for trial if they don't want to. That happened in *754 about six cases this morning. When they do plead guilty the law requires that the judge speak with them individually to be certain that they know what they're doing, they're not being taken advantage of or they're not acting under a misconception of their rights or what the circumstances are and it takes a good deal of time to do that. When that occurred this morning we had a case that's coming up for trial unexpectedly and we had some problems develop in it which we've tried to overcome in the last thirty or forty minutes but we're not going to be able to do that and we're not going to be able to reach the case until 1:30." (Emphasis supplied.)
Defendant argues Judge Farr's comments insinuated defendant had previously attempted to plead guilty, and these insinuations prejudiced his right to a fair trial. La.Code Crim.P. arts. 771, 775.[3]
This contention is not well-founded. Judge Farr's comments, taken as a whole, make it quite clear the delay in reaching defendant's case was due to last minute pleas in six cases, with the attendant need for him to interrogate each defendant before accepting his plea. There was no implication that Jones had planned to plead guilty. Nothing was said by Judge Farr as regards anyone suddenly changing his mind after he had previously decided to plead guilty. In speaking of "(W)hen that occurred this morning....," it is obvious the reference is to the six defendants who did not decide to enter pleas until their cases were called for trial that morning. Such subject matter was pinpointed with the comment: "That happened in about six cases this morning." (Emphasis added.) From the entirety of the judge's remarks an attentive juror would have no reasonable basis to infer Jones had either attempted or planned to plead guilty when his case was called for trial.
Unlike State v. Gaspard, 301 So.2d 344 (La.1974), there were no direct statements in this instance with respect to plea bargaining or an attempt to plead guilty. There is nothing of substance from which a prejudicial inference may be drawn. There is no real likelihood a prospective juror could have construed the judge's comments as a reference to defendant's prior intention to plead, of which they were totally unaware.
Contrary to the thrust of defendant's contention, Judge Farr is to be complimented for his sensitivity to the role jurors play in the criminal justice system and the need to explain delays which are a waste of their time. It is obvious he was professionally aware of the danger of prejudicial remarks and carefully refrained from saying anything that would deprive the defendant of a fair trial.
This assignment is without merit.

ASSIGNMENTS OF ERRORS NOS. 4 AND 5
By these assignments, defendant argues the trial court erred in permitting references to other crimes both by a state witness on direct examination and by the prosecutor during closing argument.
During its case-in-chief, the prosecution questioned Ouachita Parish Detective Larry Saurage as to the nature of the information which had prompted defendant's arrest:
"Q. Give us just general information about what you learned from the informant and what you did. Don't go into details about what was said.
A. Our department at that time held warrants on Richard Earl Jones and I was attempting to locate him on these warrants, not on" At this point, defense counsel objected to the reference to other warrants; the trial court responded by admonishing the witness not to relate matters dealing with other cases. Defense counsel later requested a mistrial, but this request was denied.
*755 A second defense objection arose when the prosecutor, during rebuttal argument, suggested the length of defendant's interrogation by Ouachita officers may have been attributable to their "talking to him about other persons involvement or about other cases." The defense objection to such rebuttal argument and a request for mistrial were lodged as soon as the jury left for deliberations.
Defendant is accurate in his contention that Louisiana courts do not permit the admission of "other crimes" evidence unless that evidence is substantially relevant for some purpose other than to suggest the accused probably committed the crime because he has a bad character. State v. Monroe, 364 So.2d 570 (La.1978). However, the comments at issue were clearly not such as to warrant the drastic remedy of mistrial. La.Code Crim.P. arts. 770, 771. As regards the reference by Detective Saurage to other "arrest warrants," article 771 clearly states that the proper remedy for a witness' unsolicited references to other crimes alleged to have been committed by an accused is admonition. Such was the express holding of this Court in State v. Thorson, 302 So.2d 578 (La.1974).
As concerns the alleged reference to "other cases," the prosecutor made no suggestion the accused was in fact responsible for other burglaries. Rather, this comment was intended solely to refute defense arguments that the very length of the defendant's interrogation was in itself suggestive of intimidation or coercion on the part of Ouachita Parish authorities. See La.Code Crim.P. art. 774. This remark was not nearly so objectionable as that made in State v. Lewis, 315 So.2d 626 (La.1975), wherein an officer prefaced his testimony as to an accused's confession with the observation that defendant had first wanted to tell them "about some other things he had done." This Court held that the latter remark entitled the defendant, not to a mistrial, but only to an admonition to disregard the objectionable remark. Cf., State v. Alexander, 351 So.2d 505 (La.1977) (reference by district attorney to refixing "remaining charges" for later date held not a comment on defendant's other crimes).
At best, the remarks objected to herein warranted only an admonition by the trial court. Having failed to request one, defendant cannot now complain of any prejudice resulting from its omission. State v. Baldwin, 388 So.2d 664 (La.1980).
These assignments are without merit.

ASSIGNMENTS OF ERRORS NOS. 6 AND 7
These assignments concern alleged deficiencies in the state's voluntariness predicate.
Evidence adduced outside the jury's presence in an attempt to demonstrate the voluntariness of the defendant's confession showed the following. Defendant was arrested at about 2:00 o'clock on the afternoon of February 25, 1980 and was immediately taken to the Ouachita Parish Courthouse Annex. Upon arrival, he was advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and signed a "rights of arrestee" form indicating he understood the officer's explanation. At this time, Jones told sheriff's deputies he did not wish to talk about the charges against him. He was then booked into the Ouachita Parish Jail.
At about 9:00 o'clock that evening, defendant was again approached by sheriff's deputies, who advised him of his rights. Defendant again signed a rights waiver, but on this occasion, agreed to talk with Detective Saurage about the offense.[4] According to Saurage, defendant proceeded to admit his role in the Patterson (Count I) burglary, an admission which Saurage later recorded. Another waiver of rights form was then signed as to Count II, and the same procedure was followed. A second recorded confession was concluded at about 10:17 p. m. Saurage testified no force or intimidation was ever used during the interview, *756 and no threats or promises were ever made to induce Jones' confession. However, Saurage did recall a conversation regarding the possible arrest of defendant's wife, though he was unable to remember when and to whom such statements were made.
During the state's voluntariness predicate, defendant took the stand for the limited purpose of testifying as to circumstances surrounding the taking of his confession. Jones conceded he understood the explanation of rights given by the arresting officers, but claimed he admitted responsibility for the burglaries only in the face of Deputy Tom Mason's threat to arrest his wife and place his child in the custody of juvenile authorities. Defendant further testified he had requested permission to use the phone on several occasions, but in each instance his request was denied. He claimed he was not allowed to use the phone until the following day.
On rebuttal, the state called Mr. H. G. Sullivan, the director of the Ouachita Parish jail. Sullivan testified part of his job was to keep certain jail records, which included records of inmates' initial phone calls. Under the procedure adopted by the Ouachita Parish jail, a defendant is first booked and placed in a visitor's cell with a telephone. According to Sullivan, the booking deputy then fills out a jail card with the defendant's name and allows him to initial the card when he makes a phone call.
Over defense objection Sullivan was then permitted to identify the defendant's jail card and to testify the card showed Jones had placed a call to his father at 2:50 p. m. on the date of his arrest. Sullivan further testified the entry showing this call had been made by Deputy Ralph Hammonds. At the conclusion of Sullivan's testimony, this card was admitted into evidence as a business record, again over the defendant's hearsay objection. On appeal, this objection forms the basis of defendant's sixth assignment of error.
In State v. Vaughn, 378 So.2d 905, 910 (La.1979), this Court laid out the applicable standards for the admission of business records as an exception to the hearsay rule:
"Louisiana jurisprudence has held that business records are admissible as proof of their assertions if the persons concerned with recording the information, from personal knowledge or from information furnished by one having a business duty to record it, are unavailable for testimony, if the first collected record available to the court is introduced, if the records are identified by one familiar with the bookkeeping procedure, and if the evidence seems reliable. State v. Perniciaro, [374 So.2d 1244 (La.1979)] supra; State v. Monroe, [345 So.2d 1185 (La.1977)] supra; see Comment, Business Records in Louisiana as an Exception to the Hearsay Rule, 21 La.L.Rev. 449 (1961), reprinted in Pugh, Louisiana Evidence Law, 1974, 476-488."
Deputy Hammonds had not been subpoenaed to testify in the case, there being no reason for the state to suspect defendant's phone call would be of great significance to the prosecution. In brief, the state further avers it was unable to obtain Hammonds' testimony since the deputy was not on duty at that time.[5] In any event, the card was identified by the jail's director, who was the custodian of these records and who testified only Ouachita Parish deputies had access to the card filing system. Because those records were regularly kept by deputies having a duty to record information as to phone calls placed by accused defendants, the admission of defendant's jail card was correct. Even if we were to conclude the state failed properly to demonstrate Hammonds' unavailability, this error did not prejudice the defense. This evidence was not used to impeach the defendant's credibility in the eyes of the jury and could not, in itself, support a finding that the defendant's confession had been coerced.
In assignment of error number seven, defendant challenges the trial court's finding *757 that his confession was given freely and voluntarily. Defendant bases this contention upon his claim that Deputy Tom Mason had threatened to arrest his wife if he refused to confess.
Before a confession may be introduced in evidence, the state has the burden of affirmatively proving it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, inducements, or promises. La.R.S. 15:451; La.Code Crim.P. art. 703(C). A confession need not be the spontaneous act of the accused and may be obtained by means of questions and answers. La.R.S. 15:453. The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are not supported by the evidence. State v. Gaines, 354 So.2d 548, 550 (La.1978); State v. Hutto, 349 So.2d 318 (La.1977); State v. Adams, 347 So.2d 195 (La.1977).
Defendant's allegations were thoroughly refuted by state testimony during rebuttal. Deputy Mason, the person to whom the threats were attributed, testified he had never in the presence of the defendant, threatened the arrest of Mrs. Jones. Explaining Deputy Saurage's recall of such a conversation, Mason testified he and Sergeant Mike Worley had earlier travelled to Jones' residence in an attempt to effect the defendant's arrest. When Mrs. Jones told the officers defendant was not present, they warned her she could be prosecuted as an accessory to burglary if they later discovered she was concealing the accused's whereabouts. Mason further stated the possibility of Mrs. Jones' arrest had earlier been discussed with his supervisor (Commander Alfred Calhoun). Mason's testimony was corroborated by both Calhoun and Saurage, both of whom denied ever having made such a threat in the presence of the accused. Considering the strength of this rebuttal testimony, the trial court's finding of voluntariness was correct.
These assignments are without merit.

DECREE
For the foregoing reasons, the convictions and sentences of the defendant, Richard Earl Jones, are affirmed.
AFFIRMED.
DIXON, C. J., concurs.
NOTES
[*] Judges Ellis, Cole, and Watkins of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Watson, and Lemmon.
[1] In any event, the defense makes no specific claim as to how the denial of continuance prejudiced his case. Since this is not a case where the time for preparation was so minimal as to raise questions as to the fairness of the proceeding, defendant was not excused from the requirement that specific prejudice be demonstrated. Defense counsel had nearly as much time to prepare his case as he would have had if defendant had never agreed to plead guilty.
[2] Defendant's oral motion for continuance is improper under La.Code Crim.P. art. 707. This Court has stated on numerous occasions the denial of an oral motion for continuance presents nothing for review. State v. Jones, 340 So.2d 563 (La.1976); State v. Wagster, 361 So.2d 849 (La.1975); State v. Weathers, 304 So.2d 662 (La.1974). In fairness to the defense, however, the grounds for continuance were not known until the morning of trial. For this reason, the oral motion is reviewed.
[3] Defendant raised this objection below via motion for mistrial under La.Code Crim.P. art. 771. However, since trial had not yet begun, use of this procedural vehicle was improper. This contention is appropriately raised via motion to set aside the venire. La.Code Crim.P. art. 419.
[4] Deputy Tom Mason had conducted the earlier attempt to question the accused. Jones later testified that he "just didn't really want to talk to Tom Mason."
[5] The truncated record lodged before this Court does not directly support this allegation.