406 So.2d 1325 (1981)
STATE of Louisiana
v.
Sam THOMAS and Ellis Davenport.
No. 81-KA-0243.
Supreme Court of Louisiana.
November 16, 1981.
Rehearing Denied December 14, 1981.
*1326 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Terry L. Lindsey, Dale G. Cox, Asst. Dist. Attys., for plaintiff-appellee.
Frank M. Auer, Evans, Feist & Auer, Howard M. Fish & Jeanette G. Garrett, Office of Public Defender, Shreveport, for defendants-appellants.
LEMMON, Justice.[*]
This is an appeal by defendants Ellis Davenport and Sam Thomas, who were convicted of the armed robbery of a Shreveport liquor store and sentenced to 20 years imprisonment. At trial the state relied solely on the eyewitness identification of the store manager, while defendants presented an alibi defense. On appeal defendants principally *1327 contend that the trial court erred in refusing to suppress the manager's identification at a line-up, which was conducted without the presence of counsel, despite defendants' specific request therefor. The line-up took place after defendants' arrest, but before institution of formal legal proceedings.[1] Defendants also contend that the trial court's instructions on the statutory presumption regarding a party's failure to produce a witness under his control fatally impinged against defendants' presumption of innocence.[2]

I.
Defendants were arrested by Bossier City authorities following the commission of an unrelated armed robbery. For reasons not revealed by the record, the Shreveport police apparently suspected that defendants may have been involved in the recent robbery of a liquor store, and they showed the store manager a group of similar photographs which included pictures of defendants. Without coaching or suggestion by the officers, the manager identified defendants as his assailants.
Shreveport police then arranged for a corporeal line-up. By the time that the Shreveport officers sought to secure defendants for the line-up, counsel had already been appointed to represent them on the unrelated charges. When the officers advised defendants that they were to be placed in a line-up, both requested the assistance of counsel. The police conducted the line-up without the presence of counsel for either defendant, and the manager identified both defendants from among a group of other males.
After defendants were formally charged by bill of information with armed robbery, they filed a pretrial motion to suppress the identification made at the photo spread and the physical line-up. At the hearing on the motion defendants' evidence focused solely on the absence of counsel at the line-up.[3] Both defendants testified that they advised the officers they objected to being required to participate in a line-up without the assistance of counsel. Neither testified that he requested the officers to notify his court-appointed attorney or that he requested and was denied an opportunity to communicate with his court-appointed attorney. The trial court denied the motion.
At the ensuing trial the manager testified as to his prior identification of defendants at the photo spread and at the line-up, and then he unequivocally identified defendants, seated in the courtroom, as the men who robbed him. Despite vigorous efforts by defense counsel to discredit the manager's identification, the jury found defendants guilty as charged.
In Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the Court limited the rule of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), which had required the presence of counsel (unless waived) at corporeal lineups, *1328 to cases in which the line-up was conducted "at or after the initiation of adversary judicial criminal proceedings." 406 U.S. at 689, 92 S.Ct. at 1882. See also Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977). Compare United States v. Ash, above. The Court in Wade had held that the Sixth Amendment entitled the accused to the assistance of counsel at an identification procedure (at which he was physically present) and that a per se rule of exclusion of the line-up identification was necessary to enforce such a right.[4] In Kirby the court decided that the due process fairness protections were sufficient safeguards for identification procedures conducted prior to formal charging.[5]
This court has followed that rationale with regard to the Sixth Amendment rights of an accused and has determined that the Louisiana constitutional right to counsel does not necessarily compel a different result.[6] See State v. Smith, 357 So.2d 798 (La.1978); State v. Johnson, 327 So.2d 388 (La.1976).
Nevertheless, as we have indicated in prior cases such as State v. Stewart, above, the Kirby rationale may be unduly broad in Louisiana, at least in the face of a specific request. C.Cr.P. art. 230 expressly provides to an accused "from the moment of arrest, a right to procure and confer with counsel". This statutory right obviously reflects a legislative concern with and recognition of the right of an accused to secure the services of counsel to advise him and to assure protection of his statutory and constitutional rights during post-arrest proceedings. If the statutory right was violated in this case, the issue would become one of determining the extent to which this court must enforce the legislative edict by exclusion of otherwise reliable identification evidence.
However, although defendants both demanded the presence of counsel at the line-up, neither specifically requested notice of the line-up to his court appointed counsel. Further, there was no indication that the officers conducting the line-up were aware that defendants were represented by counsel, or, more particularly, that counsel had been appointed to represent them on the matter still under investigation (on which they had not yet been booked). Therefore, this case does not involve a bad faith effort to seclude defendants from counsel during the conduct of an identification procedure.
Even if defendants' statutory right was violated, this court need not apply a per se exclusionary rule in this case, which does not involve a violation of defendants' constitutional right to counsel.
Certainly, a timely request that the police notify (or permit an accused to notify) counsel of a forthcoming line-up ought always to be honored. Nevertheless, in the absence of a bad faith effort to circumvent defendants' statutory right to counsel following arrest, and given the showing made in this case that the line-up was conducted according to fair and standard police procedure, the exclusion of reliable evidence is too great a price to impose solely because of the absence of counsel at the line-up.
*1329 It is also logical to refuse to apply a per se rule of exclusion because the presence of counsel at the line-up is primarily intended to prevent unfairness, as noted in Wade, and not to prevent the accused from involuntarily supplying physical evidence against himself. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The Wade decision not only clearly recognized that the accused has no constitutional right to refuse to participate in a line-up, but also suggested that standard statutory or police administrative regulations assuring fairness could possibly remove the post-indictment line-up as a "critical stage" at which the Sixth Amendment right to counsel attaches. See State v. Pierre, 261 La. 42, 259 So.2d 6 (1972). Thus, the statutory right at issue here may be enforced simply by placing the burden on the state, when the statute has been violated, to prove the fairness of the procedure employed. This approach accommodates society's interest in fair and accurate factfinding in criminal trials and defendants' statutory right to "procure and confer with counsel" following arrest.[7] C.Cr.P. Art. 230.
Even if we were to treat the line-up identification evidence as improperly secured, the in-court identification was here shown to have emanated from the manager's independent recollection of defendants' appearance at the time of the offense and thus was not the product of a tainted line-up. See Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The manager testified that the store was well lighted and that he had an excellent opportunity to view both defendants for a significant period of time. He gave a reasonably accurate description to police immediately following the robbery and unhesitatingly identified both from a photo spread which was conducted on a fair and non-suggestive manner. Given this showing, the introduction of the line-up identification evidence merely corroborated the other two independently admissible identifications and can thus be viewed as harmless under C.Cr.P. Art. 921.[8] The admission of this evidence cannot be said to have resulted in substantial prejudice to the accused, but rather was merely "cumulative and corroborative of the testimony of the witness himself". State v. Ford, 336 So.2d 817, 822 (La.1976).

II.
In support of the alibi the defense presented the testimony of a female companion of the two defendants. The witness testified that both defendants were with her and another female named Vicki Miles at the time of the robbery. Defendant Ellis Davenport also testified in support of the joint alibi. Vicki Miles was not called, however, because, according to defense counsel, she did not have adequate recollection of the dates involved.
Defendants contend that the trial judge erred in instructing the jury as to the presumption that "evidence under the control of a party and not produced by him was not produced because it would not have aided him".[9] See R.S. 15:432. While there *1330 are undoubtedly circumstances (not present here) in which the jury may be misled by such an instruction, the trial judge's overall instruction clearly informed the jury that the verdict must be based solely on the evidence or lack of evidence, and that the state must carry the burden of proving the guilt of the accused beyond a reasonable doubt. The judge, in no uncertain terms, also made the jury aware that defendants were under no obligation to present any evidence.
The passing reference to the above stated statutory presumption did not misleadingly imply that the missing witness would present testimony prejudicial to defendants, but merely indicated that the testimony would not have aided the defense. Here, given the proper and complete instructions regarding the presumption of innocence and the state's burden of proof, the trial judge's comment merely alluded to a rather obvious conclusion, and reversal of the conviction is clearly unwarranted. Although it is generally better to let the jury draw such inferences without the aid of such an instruction, the jury in this case was fully informed as to the burden of proof and the presumption of innocence, and the instructions, considered as a whole, did not prejudice the defendants.[10] See State v. Dupre, 369 So.2d 1303 (La.1979).
The defendants' convictions and sentences are affirmed.
WATSON, J., concurs.
CALOGERO and DENNIS, JJ., and GUIDRY, J., ad hoc, concur and assign reasons.
CALOGERO, Justice, concurring.
Because the lineup identification occurred before the defendants were indicted by the grand jury, because there is dispute about whether a specific or general request was made for the presence of an attorney, because the lineup took place in a jurisdiction other than that in which the defendants were being held on the separate charge, and for the reasons set forth in State v. Vaughn, 378 So.2d 905 (La.1979), I find no merit to Assignment of Error Number One. Accordingly, I concur in affirmance of defendant's conviction and sentence.
E. L. GUIDRY, Justice ad hoc.
I do not agree that C.Cr.P. Article 230 grants to an accused a statutory right to the presence of counsel at a pre-indictment lineup. In my view Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) is dispositive of defendants' principal contention. As this court stated in State v. Stewart, 389 So.2d 1321, 1325 (La.1980):

"In Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the United States Supreme Court held that the presence of counsel at a pre-indictment lineup was not a requirement of due process. This Court has followed Kirby in a number of decisions: State v. Hargrove, 330 *1331 So.2d 895 (La.1976); State v. Johnson, 327 So.2d 388 (La.1976); and State v. Smith, 357 So.2d 798 (La.1978)."
For these reasons I respectfully concur.
DENNIS, Justice, concurring.
Once counsel has been retained or appointed, the accused has a right to his counsel's presence when he is interrogated or when his person is exhibited at a line-up. Insofar as the record discloses in this case, however, the defendants did not inform the officers that an attorney had been retained or appointed to represent them in any criminal proceeding. In effect, they merely objected to a line-up being conducted without an attorney present to represent them. Although a defendant's right to the assistance of counsel at a line-up is given fuller protection under our state constitution than by the narrower federal standard, La.Const. 1974, art. 1, § 13; State v. Vaughn, 378 So.2d 905 (La.1979); State v. Smith, 357 So.2d 798 (La.1978); State v. Holmes, 354 So.2d 1282 (La.1977) (Tate and Dennis, JJ., concurring); State v. Spears, 350 So.2d 603, 607 (La.1977) (Calogero, J., concurring); Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 1, 46 (1974), if the police officers are not informed and have no knowledge that counsel has been retained or appointed, there is no requirement that the line-up be delayed or postponed.
NOTES
[*] Judges E. L. Guidry, Jr. and G. William Swift, Jr. of the Third Circuit Court of Appeal and Judge Robert J. Klees of the Fourth Circuit Court of Appeal participated in this decision as Associate Justices ad hoc with Associate Justices Calogero, Dennis, Watson and Lemmon.
[1] Although we conclude the trial court properly denied the motion to suppress the line-up identification, we have further determined that the witness' subsequent identification at trial stemmed from an independent source.
[2] Defendants' remaining assignments of error involve only well settled principles of law and are treated in an attached unpublished appendix.
[3] No evidence was introduced tending to show that the photo spread or line-up were in any way suggestive. Moreover, evidence introduced at trial by the state, offered to strengthen the impact of the prior identification, tended to show that the identification procedures employed were eminently fair and designed to produce a reliable identification. Thus, there are no "due process" implications involved here as to the manner in which the pretrial identification procedures were conducted. See Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973).

Moreover, neither the motion to suppress nor defendants' trial objection challenged the admissibility on hearsay grounds of the manager's testimony concerning his prior identifications. See Justice Tate's excellent and scholarly discussion of that problem in State v. Ford, 336 So.2d 817 (La. 1976). Compare F.R.Ev. 801 which recognizes the admissibility of such testimony by a witness concerning his prior identification. See also United States v. Barbati, 284 F.Supp. 409 (E.D.N.Y.1968). Thus, that issue is not before the court in this appeal.
[4] Whether the witness' courtroom identification is admissible following a line-up conducted in violation of Wade is dependent upon whether the state can prove, by clear and convincing evidence, that the witness' courtroom identification is independently derived and thus is not the product of the tainted line-up.
[5] In Stovall v. Denno, above, and Foster v. California, above, the Court recognized the potential dangers of misidentification during pretrial identification. In Kirby the Court reiterated that "the due process clause of the Fifth and Fourteenth Amendments forbids a line-up that is unnecessarily suggestive and conducive to an irreparable mistaken identification." 406 U.S. at 691, 92 S.Ct. at 1883. See also United States v. Ash, above.
[6] La.Const. Art. I, Sec. 13 (1974) in pertinent part provides:

"At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment."
Our construction of "stage of the proceedings" parallels the United States Supreme Court's analysis of the Sixth Amendment rights of an accused at an identification procedure in which he is compelled to participate. See State v. Stewart, 389 So.2d 1321 (La.1980); State v. Vaughn, 378 So.2d 905 (La. 1979); State v. Johnson, 327 So.2d 388 (La.1976).
[7] It is not necessary to decide here what sort of remedy we would adopt to enforce the legislative mandate. See State v. Patton, 374 So.2d 1211 (La. 1979); State v. Longlois, 374 So.2d 1208 (La.1979); State v. Bickham, 404 So.2d 929 (La. 1981).
[8] In view of our conclusion that the right involved is statutory as opposed to constitutional, the standard for harmless error is the statutory standard. Compare Justice Dennis' excellent discussion of harmless constitutional error in State v. Gibson, 391 So.2d 421 (La.1980). Further, the "error" here emanates from the refusal to exclude the evidence due to a police error in failing to notify counsel (or give defendants an opportunity to notify counsel). Because, as discussed, this is a statutorily recognized right, the statutory harmless error standard should apply.
[9] Defendants also raised this issue in a motion for new trial, complaining of the prosecutor's comment in closing argument on Vicki Miles' failure to testify. For the reasons stated, that argument is also meritless. It is further noteworthy that counsel for Thomas initially called attention to the "presumption" in his closing argument and called the jury's attention to the availability of Vicki Miles, if the state had desired to call her. Whether Vicki Miles was "under the control" of defendants was obviously an issue, because the state could also have called her as a witness. See State v. Simms, 381 So.2d 472 (La. 1980). Nevertheless, while the use of "presumption of unhelpfulness" is probably more confusing than helpful, the reference to the "presumption" here merely restated the obvious. There was certainly no error in the prosecutor's calling to the jury's attention the failure of the other party to call a witness (as long as the prosecutor did not improperly comment on the failure of the defendant to testify). See C.Cr.P. Arts. 764, 770.

Finally, defendants complain that the prosecutor improperly remarked in closing argument that the defense did not furnish the names and addresses of the alibi witnesses (which were not requested timely). Defendants contend the comment conveyed the impression that their counsel had concealed evidence.
Although improper, the comment can hardly be attributed any significant impact on the factfinding process, and we conclude that reversal is not required.
[10] Defendants also complain of the failure of the trial court to read their entire requested instruction on the effect of impeachment by prior inconsistent statements. It is noteworthy that defendants were very liberally treated by the trial court regarding their impeachment of the state's critical witness, the manager. They were not denied any opportunity to cross-examine him about such matters as being fired by his employer, being delinquent in rental payments, being responsible for cash shortages and other matters. Further, extrinsic evidence of matters tending to affect his credibility adversely was offered (and sometimes rebuttable evidence on these matters was offered by the state). The jury was adequately made aware of impeaching evidence and was adequately instructed as to its effect. There was no prejudice due to the failure to read the proposed instruction in its entirety.