411 So.2d 1058 (1982)
STATE of Louisiana
v.
Elton HARGRAVE, Jr.
No. 81-KA-1599.
Supreme Court of Louisiana.
March 1, 1982.
Rehearing Denied April 16, 1982.
*1059 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., W. Gregory Arnette, Jr., Dist. Atty., Abbott J. Reeves, James Stainback, Asst. Dist. Attys., for plaintiff-appellee.
Kenneth E. Badon, Gerald J. Casey, Lake Charles, for defendant-appellant.
PRICE, Justice Ad Hoc[*].
Defendant, Elton G. Hargrave, Jr., was indicted by the Jefferson Davis Parish grand jury of negligent homicide (La.R.S. 14:32). He waived his right to a jury trial and was found guilty as charged. The trial court sentenced him to three years at hard labor, but suspended the sentence and placed defendant on supervised probation for a period of three years. In addition the defendant's driver's license was suspended for one year. Defendant appeals relying on four assignments of error.
On the evening of December 30, 1980, the eighteen-year-old defendant picked up his girl friend, Joy Ryder, at about 6:30 p. m. After purchasing a couple of cartons of beer they visited a local gathering place for young people and socialized for an extended period of time. Defendant and his girl friend drank most of the beer. Later in the evening, two other youths decided to go to the outskirts of town to drag race their pick-up trucks. Defendant and his girl friend then decided to follow to watch the race. They were following a truck occupied by Stephen Benoit and Dwain Manuel on Louisiana Highway 26 (speed limit 55 m. p. h.) at a distance of some four car lengths. As the vehicles approached the intersection of Highway 26 and Highway 380, defendant's vehicle struck a pedestrian, Vernon Earl Jones, killing him instantly. Jones was walking with northbound traffic on the right-hand side of the road. He was wearing dark clothing. An autopsy disclosed he had a blood alcohol content of .152 milligrams.
After determining that Jones was dead, defendant drove to the police station to report the accident.
ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial court erred in allowing into evidence an inculpatory statement made by defendant in the presence of Benoit since defense counsel did *1060 not receive notice of such statement prior to trial as required by La.C.Cr.P. Art. 768. A review of Benoit's testimony reflects that he never repeated any statements made by the defendant to him that night. Benoit gave his opinion of defendant's physical condition regarding intoxication; however, no oral inculpatory statements were ever introduced. This assignment lacks merit.
ASSIGNMENTS OF ERROR NOS. 2 AND 3
By these assignments of error defendant contends the trial court erred in admitting into evidence a constitutional rights waiver form relating to a chemical test for intoxication, and the results of the blood alcohol test that was performed subsequent to an uncounselled waiver of constitutional rights.
After arriving at the police station, defendant was taken to the hospital for a P.E.I. test. Prior to his taking the test, defendant was asked by Detective Ervin Trahan to sign a constitutional rights waiver form as required by La.R.S. 32:661(C).[1] The form had three pertinent parts: (A) the effect of refusal; (B) options for additional testing; (C) Miranda rights. Trahan complied with the statute by reading to defendant Part A regarding the effects of refusal under 661. Defendant then signed the form.
Defendant now contends that his Miranda rights also should have been read to him since he was treated as if he were under arrest. Alternatively, if he was not under arrest, then the results of the test should not be admissible as he was improperly advised he must submit to the test or lose his driver's license since the sanctions imposed for refusing to take the test apply only to arrested persons. La.R.S. 32:661(A) provides:
Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of R.S. 32:662, to a chemical test or tests of his blood, breath, urine, or other bodily substances for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while believed to be under the influence of alcoholic beverages.
La.C.Cr.P. 201 provides:
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
This court has held that the definition of arrest is keyed to the concept of restraint. The circumstances indicating an intent to effect a restraint on the liberty of an accused, rather than the precise timing of the words "you are under arrest," determine when an arrest has been made. State v. Morvant, 384 So.2d 765 (La.1980); State v. Tomasetti, 381 So.2d 420 (La.1980). In the instant case defendant voluntarily entered the police station and admitted hitting a man with his car. He remained there until his parents arrived and was then transported to the hospital for the P.E.I. test. At no time was the defendant told he *1061 was free to leave. Trahan's explanation to the defendant of the possible sanctions that would be imposed if he refused to take the test indicated that the defendant was being treated as an arrested person under La.R.S. 32:661(A). In addition the first sentence contained in the form signed by defendant contained the phrase "you are under arrest." Under the circumstances of this case, we believe that the intent of Detective Trahan to restrain the defendant was sufficient to constitute his arrest.
Nevertheless, the failure of the officer to read the Miranda rights portion of the waiver form to defendant does not infringe upon a constitutionally protected right of defendant under these circumstances. The jurisprudence holds that Fifth Amendment privilege against self-incrimination applies only to evidence of a testimonial or communicative nature. The compulsory extraction of a blood sample for an intoxication test infringes no constitutional rights. Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1965); Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957); State v. Dugas, 252 La. 345, 211 So.2d 285 (1968), cert, denied 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691. Since Detective Trahan complied with the procedures outlined in La. R.S. 32:661(C), there was no statutory or constitutional bar to the admission of the results of defendant's blood test. These assignments lack merit.
ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial court erred in denying his motion for directed verdict of acquittal since the state failed to prove that the defendant was guilty of negligent homicide because there was no proof beyond a reasonable doubt of criminal negligence.
La.C.Cr.P. Art. 778 governs the motion for acquittal. It provides:
In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant's, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
If the court denies a defendant's motion for a judgment of acquittal at the close of the state's case, the defendant may offer its evidence in defense.
The denial of such a motion may be reversed on appeal only if there is no evidence of the crime or an essential element thereof or where the denial is a palpable abuse of discretion. State v. Vaughn, 378 So.2d 905 (La.1979).
La.R.S. 14:32 provides in pertinent part:
Negligent homicide is the killing of a human being by criminal negligence.
The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
La.R.S. 14:12 defines criminal negligence as:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under the circumstances.
The reporter's comment to this section states: "Criminal negligence, in fact, corresponds to the concept of `gross negligence' in tort law. See Restatement of the Law of Torts (1934) §§ 282 to 284, 500.
Section 500 provides:
The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize an unreasonable risk of bodily harm to the other, but also involves a high degree of probability that substantial harm will result to him.
It is clear that evidence which tends to support a finding of ordinary negligence is not sufficient to constitute a proof of criminal negligence. State v. Jones, 298 So.2d 774 (La.1974).
*1062 Viewing the evidence in light of the foregoing principles, we find that the trial court clearly abused its discretion in denying the motion for acquittal.
The state argues that the cumulative evidence of defendant's intoxicated condition, his speeding, and his driving on the shoulder of the road when he hit the victim is sufficient to constitute criminal negligence.
However, the results of the defendant's P.E.I. test show that his blood alcohol level was only .10, the minimum level for the statutory presumption of intoxication, about two hours after the accident. The evidence is conflicting on the amount of beer defendant had consumed over a five-hour period. Defendant estimates he drank five or six and his girl friend believed he might have consumed slightly more.
The state called as witnesses three of defendant's acquaintances who had seen him earlier that evening. They testified that although his laughing and humorous mood indicated to them that he had been drinking to some extent, there was no appearance of any impairment of physical coordination or speech incoherence. The police officers who interviewed the defendant at the police station when he reported the accident testified that his appearance and demeanor at that time did not indicate to them defendant was intoxicated to such an extent that a P.E.I. test would have been administered. The reason for subjecting defendant to such a test was the policy of the department to require the test in all accident cases involving a homicide.
The state relied on the testimony of an accident reconstruction expert, a member of the state police, in an attempt to estimate the speed of the defendant's vehicle at the time of impact. After conducting a series of tests approximately three months after the accident, the expert estimated his speed to be 70 m.p.h. The defendant estimated his speed at the time of impact to be 55 m.p.h., while Ms. Ryder testified they were traveling approximately 35 to 40 m.p.h. The trooper who conducted the test admitted his conclusion was only an estimate, and that many variables are involved in such calculations.
To substantiate their contention that the defendant was traveling on the shoulder of the road prior to the accident, the state introduced photographs of skid marks from the defendant's vehicle which began and ended on the shoulder of the road. Also the state contends that the location of the victim's hat on the shoulder indicates that he was struck while walking on the shoulder.
The defendant testified that when he first observed the victim, the victim was walking away from him on the highway near the shoulder. To avoid the impact, he swerved to the right, but was unable to avoid striking the victim. He then left the highway and applied his brakes while on the shoulder of the road. Ms. Ryder testified that immediately prior to the impact, the victim was walking on the highway near the shoulder. Dwain Manual, the passenger in the Benoit vehicle, testified that when he heard the sound of squealing brakes, he turned around and saw that defendant's car was partly on the highway.
The state is not required to prove beyond a reasonable doubt each of the three instances of negligence it relied upon to establish criminal negligence. However, this evidence, when taken as a whole, must be sufficient to prove beyond a reasonable doubt the charged offense.
The overall evidence in this instance does not prove beyond a reasonable doubt criminal negligence on the part of defendant. The evidence to support the state's contention that defendant was driving at a high rate of speed on the shoulder of the highway is entirely circumstantial. The evidence of intoxication is minimal. These factors when considered along with the fact that the victim was intoxicated, was walking with traffic in contravention of La.R.S. 32:216(B), was wearing dark clothing, and had been seen weaving on and off the roadway prior to the accident by other motorists preclude any reasonable finding of criminal negligence.
While the state may have produced sufficient circumstantial evidence to constitute a *1063 preponderance in a civil case, it is not sufficient to support a conviction of negligent homicide.
For the reasons assigned, defendant's conviction and sentence are reversed and defendant is ordered discharged.
MARCUS and WATSON, JJ., dissent.
BOUTALL, J. ad hoc, dissents with reasons.
BOUTALL, Justice Ad Hoc, dissents.
I dissent from the reversal of conviction. Our constitution, Art. 5 § 5(C), provides that our appellate jurisdiction extends only to questions of law. This opinion goes beyond the principles expressed in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
NOTES
[*] Judges O. E. Price of the Court of Appeals, Second Circuit, John C. Boutall, Court of Appeal, Fourth Circuit, and Fred W. Jones, Jr., Court of Appeal, Second Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Justices Pascal F. Calogero, Jr., Walter F. Marcus, Jr., James L. Dennis, and Jack C. Watson.
[1] La.R.S. 32:661(C):

C. When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first inform the person of the consequences of a refusal. In addition, the law enforcement officer shall have the person sign a standard form advising such person of the consequences of his refusal to submit to a chemical test, provided however that a single combination of the two forms may be used. If the person is unable or unwilling to sign the form, the law enforcement officer shall certify that such person was informed of his constitutional rights and was unable or unwilling to sign said form. If the above procedure is not complied with, the results of the test or any reference to it is inadmissible into evidence in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages.