431 So.2d 871 (1983)
STATE of Louisiana, State/Appellee,
v.
Howard HILL, Defendant/Appellant.
No. 15332-KA.
Court of Appeal of Louisiana, Second Circuit.
May 3, 1983.
Rehearing Denied June 8, 1983.
*872 Richard Goorley, Asst. Indigent Defender, Shreveport, for defendant/appellant.
Dale G. Cox and Catherine Estopinal, Asst. Dist. Attys., Shreveport, for State/appellee.
Before MARVIN, JASPER E. JONES and SEXTON, JJ.
SEXTON, Judge.
The defendant, Howard Hill, appeals his conviction for the September 28, 1981, attempted second degree murder of Ralph Brumley, a Shreveport City Jailer, and his sentence imposed for that offense of 50 years at hard labor. We affirm.
The defendant was originally found incompetent to stand trial on December 14, 1981, and after his return from the Feliciana Forensic Facility for treatment of the psychosis which precluded trial, he was found competent to proceed on September 23, 1982. He thereafter pled not guilty and not guilty by reason of insanity, waived his right to a trial by jury and was found guilty as charged in a bench trial on July 13, 1982. He was sentenced as previously indicated on October 20, 1982.
At about 10:00 a.m. on September 28, 1981, the defendant appeared at Shreveport *873 City Hall and requested to see the Mayor. After being directed to a security officer, the defendant indicated that he wanted the Mayor to buy him "some dope." The security officer, Lieutenant Mangum, described the defendant as loud and profane and testified that the defendant threatened him upon learning that he was a police officer. The Lieutenant further testified that the defendant was salivating excessively and had very bloodshot eyes. While the Lieutenant was unable to smell any alcohol, he testified that the defendant appeared to be "under the influence of some sort of intoxicant."
Lieutenant Mangum arrested the defendant for disturbing the peace in violation of a Shreveport City ordinance, patted the defendant's outer clothing, and in the company of a uniformed officer escorted the defendant to the booking desk where he was once again searched. Upon reaching the jail, the defendant was placed in a jail cell reserved for problem prisoners. In contrast to his earlier behavior, the defendant was calm and polite for a number of hours. At about 5:00 p.m., Mr. Brumley handed the defendant his supper through a small portal in the cell door provided for that purpose. The defendant did not eat. In response to Mr. Brumley's inquiry, the defendant advised Mr. Brumley that the food was too hot. The defendant was given additional time to finish his meal.
Mr. Brumley returned later and found that although all the other prisoners had eaten, the defendant had not touched his food. Mr. Brumley advised him to go ahead and eat and the defendant placed his tray on his lap. At this point the defendant told Mr. Brumley that he wanted to show him something. Mr. Brumley then observed through the 11 inch by 12 inch portal in the door of the cell as the defendant stood up and removed the tray from his lap. The defendant then retrieved, from the top of his bunk, what appeared to be merely a cigarette wrapped in toilet paper. The defendant extended the "cigarette" through the portal opening with his hand, and Mr. Brumley moved toward defendant's outstretched hand to observe it. As Mr. Brumley remarked that the object was only a cigarette, the defendant slashed at Mr. Brumley's throat with a single-edged razor blade that had been concealed in the cigarette and toilet paper. As the defendant slashed at him, Mr. Brumley ducked his body to the right and was struck by the razor blade on the left side of his face. He received a deep gash from directly under his ear down to his chin which subsequently required 16 stitches to close. After the incident, the defendant shook the razor at Mr. Brumley and exclaimed, "that will teach you to mess with me."
The defendant originally indicated four assignments of error, but does not brief Assignment of Error No. 1 and that assignment is therefore considered abandoned. State v. Domingue, 298 So.2d 723 (La.1974). By Assignment of Error No. 2 defendant contends the trial court erred in overruling the defense motion for a directed verdict because the State did not affirmatively prove the requisite specific intent. By Assignment of Error No. 3 defendant contends that under the standard pronounced in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), a rational trier of fact could not have found the defendant guilty beyond a reasonable doubt. In his final assignment defendant contends that the sentence imposed is excessive.
ASSIGNMENT OF ERROR NO. 2DENIAL OF DEFENDANT'S MOTION FOR A DIRECTED VERDICT
By this assignment the defendant asserts that the trial court erred in denying the defense motion for a directed verdict made in accordance with LSA-C.Cr.P. Art. 778.[1] The import of this article was succinctly *874 summarized in State v. Hargrave, 411 So.2d 1058 (La.1982):
"The denial of such a motion may be reversed on appeal only if there is no evidence of the crime or an essential element thereof or where the denial is a palpable abuse of discretion. State v. Vaughn, 378 So.2d 905 (La.1979)." Hargrave, supra, at 1061.
Therefore in order for the defendant to prevail there must have been no evidence of one of the elements of the offense of attempted second degree murder. The elements of this offense are (1) a specific intent, (2) to kill or inflict great bodily harm, and (3) an act tending directly toward the accomplishment of that object. LSA-R.S. 14:30.1, 14:27, and State v. Huizar, 414 So.2d 741 (La.1982).
Specific criminal intent is present when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act. LSA-R.S. 14:10(1). However, specific intent is a state of mind not required to be proven as a fact, but can be inferred from the circumstances of the offense and the actions of the defendant. State v. Holmes, 388 So.2d 722 (La.1980). The length and depth of the victim's wound indicate that the defendant's thrust was well aimed and powerful. It was not merely a parry or even a thrust, but was a strong and purposeful slash. As the trial judge noted, it was only by "a stroke of fortune or good luck in reflexes, [that] Mr. Brumley was alive and able to testify at the trial." We agree that it is apparent from the record that if the jailer had not taken timely evasive actions the defendant would have cut him deeply in the throat, probably severing a major artery there. Furthermore, the defendant lured the victim within striking distance before slashing at him with the concealed razor blade.
These actions constitute evidence of each of the aforementioned essential elements of the offense of attempted second degree murder and we thus find that the denial of the motion for a directed verdict was not a palpable abuse of discretion.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 3INSUFFICIENCY OF EVIDENCE
Defendant here contends that when viewed in the light most favorable to the prosecution, the evidence is insufficient for a rational trier of fact to have found that the essential elements of the offense were proven beyond a reasonable doubt. See Jackson v. Virginia, supra.
We have just delineated the evidence with respect to the various elements of the offense in our treatment of the previous assignment of error. It is clear that when considered in the light most favorable to the prosecution the evidence clearly satisfies the Jackson v. Virginia test.
We also note the defense contention that both members of the sanity commission testified that the defendant was psychotic at the time of the offense. However both physicians, trained and qualified psychiatrists, affirmatively testified that the defendant knew the difference between right and wrong at the time of the offense. These opinions were based in large part on the defendant's luring of the jailer, his concealment of the weapon until the moment of the attack, the defendant's cursing of the jailer immediately after the incident, the later indication of remorse by the defendant, and the various justifications subsequently rendered by him to justify his actions.
We find nothing in the record with respect to the defendant's mental condition which assists the defendant under the Jackson v. Virginia test. The burden is on the defendant to prove that he was insane at the time of the offense by a preponderance of the evidence. Both psychiatrists testified that at the time of the offense he knew the difference between right and wrong. His psychosis is a matter for consideration with respect to the sentence imposed.
This assignment of error lacks merit.
*875 ASSIGNMENT OF ERROR NO. 4EXCESSIVE SENTENCE
In this final assignment of error this 38 year old defendant complains that his sentence of 50 years at hard labor for this offense is excessive. The resolution of this contention is not easy, as this defendant's circumstances present a troubling situation.
Initially, we should state that the trial judge gave exhaustive reasons for sentence and had the benefit of a comprehensive pre-sentence investigation which we have reviewed. It is thus clear that Article 894.1, which provides the statutory criteria for articulation of reasons for sentence, was more than complied with by the trial judge, and the defendant does not contend otherwise.
The defense asserts that Mr. Brumley's injury was not serious and that the defendant did not consider that his conduct would threaten serious harm. Furthermore, the defense contends that the sentence was not individualized to this defendant because it was the maximum available for the offense and it was imposed on a first felony offender. The defense further asserts that the defendant's psychosis at the time of the offense, while not a legal defense, constituted a circumstance which should have mitigated against the severity of the sentence imposed.
This mildly retarded 38 year old defendant suffers from serious mental illness, and it is clear that the illness is progressive. Both psychiatrists, who were members of the sanity commission, testified at the trial that the defendant would not voluntarily take medication and when not taking medication was extremely dangerous to others. Heavy supervision and heavy medication are necessary to control his schizophrenia.
The defendant has a long history of misdemeanor offenses beginning with simple battery in February of 1964. There are also two convictions for a concealed weapon in 1966 and 1968, two gambling convictions in 1965 and 1967, a misdemeanor theft conviction in 1978, and an assault conviction in 1967.
The pre-sentence report filed in the record by the trial court at the time of sentencing indicates that defendant's mother was killed when he was weeks old in a brutal and tragic gang rape. The five week old child was found lying in the gutter at her side. His father apparently sought solace from alcohol and has never recovered. Defendant was thus raised by his mother's sister, of whom he was very fond. Both of his natural parents were well educated professionals.
The defendant was described in the presentence investigation as a slow learner who was nevertheless popular as a youth. He possessed a keen sense of humor, and was a favorite of friends and relatives. He originally attended Notre Dame School where he was "cared about." He subsequently transferred to the public school system but did not do well and dropped out in the eleventh grade. His only vice was a fondness for gambling. Although he also seemed somewhat cowardly, the defendant dressed well, maintained a job and showed no symptoms of mental illness until his aunt's death in 1970. At the time he was 26 years old and still living in her home. As a result of her death, he went into shock and required hospitalization.
Since that occasion he has been committed to Central State Hospital five times, becoming symptomatic shortly after release on several occasions. Family members apparently know when his psychosis is returning because he becomes violent and aggressivein contrast to his ordinary nature. One incident described in the report indicates that he attempted to strangle a landlord showing him a house for rent, which incident occurred while his cousin, with whom he was raised, was attempting to get him hospitalized.
In summary, defendant is a mildly retarded first felony offender. As a consequence of the tragic circumstances occurring to his parents he was raised by a doting aunt in a stable and adequate socio-economic environment. He became psychotic upon her death and his condition appears to be progressively deteriorating. *876 Both psychiatrists testifying at his trial stated that he is very dangerous with the potential to hurt and kill when off his medication, which he will not take voluntarily. The offense involved is a serious one perpetrated on a law enforcement officer who avoided a fatal wound only by his quick reflexes.
The trial court stated in imposing sentence that the defendant is "in desperate need of custodial care" and indicated that if Mr. Hill were at liberty there "would clearly be an undue risk that Howard Hill would commit another [violent] crime." Thus, the trial court imposed the maximum sentence of 50 years at hard labor in the interest of protecting the public.
It is axiomatic that the sentence is to be individualized to the defendant so as to deter that defendant from future criminal conduct and at the same time be commensurate with the severity of the offense. The sentence is to indemnify society while trying to "correct" the defendant. The courts have emphasized that the sentence should bear proportion to the severity of the crime and not be a purposeless and needless infliction of pain and suffering. State v. Brown, 412 So.2d 998 (La.1982); State v. Kersey, 406 So.2d 555 (La.1981).
It is clear to us that this sentence was particularized and responsive to the defendant's psychotic propensities for future serious offenses. But we must candidly be aware that the sentence is not likely to deter or "correct" this defendant's conduct. Also, in the sense that this psychotic defendant will be incarcerated for the maximum period in a poor environment for his condition, the sentence could possibly be considered a needless infliction of pain and suffering. However, the primary and overriding consideration in any sentence must be the protection of the public. That concern should be paramount in any sentence imposed. Thus, not only did the trial judge not abuse his considerable discretion in imposing the maximum sentence, that sentence is mandated by the violent and volatile inclinations of this defendant.
The conviction and sentence appealed from are affirmed.
AFFIRMED.
NOTES
[1] Art. 778. Motion for acquittal

In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
If the court denies a defendant's motion for a judgment of acquittal at the close of the state's case, the defendant may offer its evidence in defense.