BOWES, Judge.
Defendant, Robert E. Benoit, was charged on April 27, 1984, by a Jefferson Parish grand jury, with two counts of distributing a narcotic drug to a person under eighteen years of age (a violation of R.S. 40:981); one count of incest (in violation of R.S. 14:78) and one count of aggravated crime against nature (a violation of R.S. 14:89.1).
Defendant waived his right to a trial by jury, was tried before a district court judge *851 of the 24th Judicial District Court, and was found guilty as charged on all four counts. The trial judge sentenced Benoit to life imprisonment at hard labor on counts one and two and fifteen years at hard labor on counts three and four, with all sentences to run concurrently. From his convictions and sentences, appellant appeals.
Appellant filed three assignments of error:
ASSIGNMENT OF ERROR NUMBER 1
The trial court committed reversible error in denying defense counsel’s motion to suppress the taped statement of the defendant.
ASSIGNMENT OF ERROR NUMBER 2
The trial court committed reversible error in denying defense counsel’s motions for a mistrial and directed verdict.
ASSIGNMENT OF ERROR NUMBER 3
The trial court committed reversible error in sentencing the defendant to two terms of life imprisonment at hard labor, which sentences are excessive.
This case arose out of allegations by the defendant’s fifteen-year-old daughter and her thirteen-year-old girlfriend that appellant engaged in sexual activity with each girl and that, on one particular night, while the girls were visiting with Robert Benoit in his motel room, he gave alcohol and a Class II narcotic, Percodan (oxycodone), to the minors.

Assignment of Error Number 1

The trial court committed reversible error in denying defense counsel’s motion to suppress the taped statement of the defendant.
The facts of this case show that two statements were taken from the defendant. On January 14, 1984, Detective Judith Rice of the Jefferson Parish Sheriff’s Office took a statement which was written by Detective Rice as the defendant could not read or write. Detective Rice testified that she would write the questions as she asked them and would write down the defendant’s responses. In this statement, the defendant denied all of the allegations made against him. He denied taking certain nude photographs, he denied giving perco-dan to the juveniles, he denied having sexual acts with his daughter, and he denied any sexual activity with his daughter’s friend. This statement ended at 7:02 a.m., January 14, 1984.
Later that day, a consent to search the defendant’s home was obtained. Pursuant to that consent, the defendant’s apartment at 1546 Claire was searched and certain photographs were seized. Detective Rice testified that the reason for taking the second taped statement was because of a discrepancy between Benoit’s first statement and a later explanation as to who took the photographs that were seized and they wanted the defendant to tell the truth. Detective Dennis Dunn verified this and further testified that the second statement was also taken because there were two separate investigations — one by the Jefferson Parish Sheriff’s Office and one by the Gretna Police Department.
During the taping of the statement, the tape recorder was stopped because the defendant voiced objections to his statement being taped. Deputies Rice and Dunn both testified that the defendant objected to the use of the machine and that the taping was stopped until the use of the machine could be explained to the defendant. After the explanation, Benoit agreed to the use of the machine and the taping was resumed.
The defendant testified that while in the Gretna Police patrol car, Detective Dunn used threats in order to intimidate him into making a second statement. This allegation was denied by both Detectives Dunn and Rice, who were together in the car with Benoit for the ride back to Gretna Police Headquarters and who both participated in the taping of appellant’s second statement.
The law is clear that before a confession may be introduced into evidence, the State must affirmatively show that it was free and voluntary, and not constituted under the influence of fear, duress, intimidation, menaces, threats, inducements, or *852 promises. LSA R.S. 15:451; State v. Joseph, 454 So.2d 237 (La.App. 5th Cir.1984); State v. Jackson, 414 So.2d 310 (La.1982). In the present case, Detectives Dunn and Rice and Sergeant Chirchirello all testified that Benoit was advised of his Miranda rights several times before each confession; that he was never threatened, intimidated, or induced, etc.; that he was quite cooperative; and that he confessed freely and voluntarily. Additionally, the record reveals Benoit signed a waiver of rights form before giving each confession and the transcript of the taped statement discloses the following:
Question by Detective Dunn: And once again, did anyone threaten you to give this taped statement?
Answer by defendant: No, sir, ya’ll were good to me.
Question: And you gave this taped statement of your own free will?
Answer: Yes, sir.
After hearing argument of counsel, the learned trial judge ruled that the State had borne its burden of proof that defendant’s taped statement was freely and voluntarily given and thus was admissible.
Under our jurisprudence, the trial court’s conclusion on the credibility and weight of testimony relating to the vol-untariness of a confession for the purpose of admissibility are given great weight. The trial court’s decision will not be overturned on appeal unless it is not supported by the evidence. Because the defendant produced no evidence to refute the testimony of either witness, the trial judge did not abuse his discretion. State v. Mullins, 353 So.2d 243 (La.1977); State v. Gaines, 354 So.2d 548 (La.1978); State v. Jones, 395 So.2d 751 (La.1981).
State v. Terracina, 430 So.2d 64 (La.1983). We find the trial judge’s ruling amply supported by the record and this assignment without merit.

Assignment of Error Number 2

The trial court committed reversible error in denying defense counsel’s motions for a mistrial and directed verdict.
At the close of the State’s case, the defense moved for a directed verdict in connection with counts 1 and 2, distribution of a narcotic drug, Oxycodone, to the two juveniles, claiming that the State failed to sustain its burden of proof and that a reasonable trier of fact, viewing the evidence presented at trial in the light most favorable to the prosecution, could not have found the defendant guilty of distribution of a narcotic to the two juveniles. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
A motion for judgment of acquittal raises a sufficiency question, and the Supreme Court, in State v. Hargrave, 411 So.2d 1058, 1061 (La.1982), held that “[t]he denial of such a motion may be reversed on appeal only if there is no evidence of the crime or an essential element thereof or where the denial is a palpable abuse of discretion. State v. Vaughn, 378 So.2d 905 (La.1979) [emphasis added]” Hargrave, supra, has been widely cited by the circuits as the proper standard for review of denial of a motion for judgment of acquittal. See State v. Price, 454 So.2d 377 (La.App. 4th Cir.1984); State v. Jenkins, 454 So.2d 282 (La.App. 4th Cir.1984); State v. DeBoue, 451 So.2d 189 (La.App. 1st Cir.1984); State v. Collier, 438 So.2d 652 (La.App. 2nd Cir.1983). We agree with this statement.
Under examination by the prosecutor, defendant’s daughter testified as follows:
Q. Do you remember any pills or anything else being in the room with you?
A. Yes.
Q. What do you remember being in the room?
A. My daddy’s pills for his arm.
Q. What kind of pills were they?
A. Percodans.
Q. Can you describe them to us?
A. They are round, they are yellow.
[...]
Q. Did you, on the night that everybody was at the Sentry Motel that we’re *853 talking about, did you ever tell anybody you had a headache?
A. Yes.
Q. Who did you tell that to?
A. My daddy.
Q. What happened when you did that?
A. I told him I had a headache. And then he said, “Well, here, take this.” And I said, “Get rid of it.”
Q. What did he give you when he said, “Take this”?
A. Some kind of pill.
Q. Do you remember what the pill looked like?
A. No. [...]
Q. Had you been drinking already?
A. Yes.
Q. Do you remember whether this pill was a whole pill, or a half a pill? [objection by defense counsel]
Q. Gan you tell us anything about the pill that was given to you at that time?
A. No.
Q. Did you take it?
A. Yes.
Q. Did anyone else take anything at that time?
A. K_[the 13-year old friend]
Q. What was she given?
A. A pill.
Q. Same kind of pill?
A. Yeah.
Q. I’m sorry?
A. Yes.
Q. Did you see her take it?
A. Yes.
Q. Who gave you these pills?
A. My daddy.
Her thirteen-year-old friend testified thusly:
A. Well, I started getting a headache and he [Benoit] gave me an aspirin. Well, I thought it was an aspirin. And, well, I don’t quite remember anything after that.
Q. Do you remember what the pill looked like that you took?
A. I seen it yesterday, yeah, but I don’t —from that night, no, I didn’t remember what it looked like.
Q. Did anybody tell you what that thing was called?
A. Uh-huh. It was Percodan.
Q. They used that name that night? A. No, sir.
Q. How much of a pill did you get, full pill, half of a pill?
A. I don’t remember.
Q. You remember getting a headache, and then taking the pill, is that right? A. Uh-huh.
Q. Did you take the pill before or after you began drinking?
A. I don’t remember.
Q. You remember getting a headache, and then taking the pill, is that right? A. Uh-huh.
Q. Did you take the pill before or after you began drinking?
A. After.
Q. All right. Do you remember about how long after?
A. No.
Q. What is the next thing that you remember, K_?
A. Waking up the next morning with a terrible headache.
We find the foregoing testimony more than adequate to meet the “no evidence” standard enunciated in Hargrave, supra. We believe the trial judge was correct in his denial of the defense’s motion for a directed verdict of acquittal.
In State v. Wright, 445 So.2d 1198, 1201 (La.1984), the Supreme Court enunciated the following standard as appropriate for use by appellate courts when reviewing the sufficiency of evidence:
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime *854 charged beyond a reasonable doubt. Where circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that: “Assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.”
This Court has recognized that R.S. 15:438 is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis for the conviction. State v. Austin, 399 So.2d 158 (La.1981). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. R.S. 15:438 provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found a defendant guilty by a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is therefore a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict. As we stated in State v. Chism, 436 So.2d 464 (La.1983). La.R.S. 15:438 “may not establish a stricter standard of review than the more general reasonable juror’s reasonable doubt formula, [but] it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence.”
The testimony of the two young victims bolstered by the taped confession of the defendant convinces us that the prosecution not only met the Hargrave standard but it also met the more stringent standard set forth in Jackson v. Virginia, supra.
We, therefore, find this assignment also without merit.

Assignment of Error Number 3

The trial court committed reversible error in sentencing the defendant to two terms of life imprisonment at hard labor, which sentences are excessive.
In brief, defense counsel argues that the trial court imposed the maximum sentence for each count of violating R.S. 40:981 and that even though his sentence may be within the statutory limits, it was of such a severe nature so as to violate his constitutional right to be free from cruel and unusual punishment under Art. 1, Sec. 20 of the Louisiana Constitution of 1974.
At the time appellant was convicted, LSA R.S. 40:981 read in pertinent part:
§ 981. Distribution to persons under age eighteen
A. Persons over twenty-five to persons under eighteen. Any person who is at least twenty-five years of age, or more, who violates R.S. 40:966 or R.S. 40:967 by distributing a substance, listed in Schedules I or II, which is a narcotic drug, to a person under eighteen years of age, shall, upon conviction, be punished by life imprisonment at hard labor. [emphasis ours]
This statute gives the trial judge no discretion in imposing sentence, but mandates a sentence of life imprisonment. The sentences were imposed to run concurrently with one another, along with the sentences imposed on counts three and four. Because all sentences were ordered to run concurrently and because of the mandatory language of Art. 981(A), we find no error in the sentencing of the defendant.
Accordingly, for the reasons stated herein, we affirm the convictions and sentences of appellant.
AFFIRMED.